IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RAMON RODRIGUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 7:07CV5001 |
| vs. | ) | |
| | ) | MEMORANDUM AND ORDER |
| **DUCKWALL-ALCO, STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the magistrate judge pursuant to 28 U.S.C. § 636 and the consent of the parties on the defendant's Motion for Summary Judgment [39]. The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that the motion for summary judgment should be granted.

### I. NATURE OF THE CASE

Plaintiff, an employee of the defendant (ALCO), filed this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 ("NFEPA"), alleging that ALCO discriminated against him on the basis of race, color or national origin with respect to opportunities for job promotions. Plaintiff further alleges that ALCO unlawfully retaliated against him for filing complaints of discrimination.

ALCO affirmatively alleges that it exercised reasonable care to prevent and promptly correct discriminatory and/or retaliatory behavior, but plaintiff unreasonably failed to take advantage of such preventive or corrective opportunities. ALCO also alleges that its actions were made for legitimate, non-discriminatory and non-retaliatory reasons.

## II.  FINDINGS OF FACT

1. Plaintiff, who is Hispanic, was employed by ALCO at its Gering, Nebraska store from approximately August 26, 2002 until the store closed in May 2005.

2. On May 28, 2004 and August 10, 2004, plaintiff filed discrimination charges against ALCO, alleging national origin discrimination and retaliation.

3. Rebecca Hansen acted as Store Manager at ALCO's Gering, Nebraska store from June 2004 to April 21, 2005.  As Store Manager, Hansen was responsible for making all promotion decisions.

4. When a position became available, Hansen posted a notice informing employees of the position and the application deadline.  The notice, handwritten in bold letters on a sheet of 8½ x 11 paper, stated:

> **Attention**
> **-----//-----**
> **Group Manager**
> **Position Available**
> **If interested talk**
> **To Rebecca by**
> **Friday 3/11/05 at**
> **4:00 pm.**  ☺

After the deadline passed, Hansen evaluated the applicants to identify the best candidate for the position.

5. After Hansen identified the best candidate for the position, she obtained corporate approval by discussing her evaluation of the candidates and proposed selection with Dennis Alesio, Vice President of Human Resources.  Alesio approved every promotion decision Hansen made while she was Store Manager of the Gering store.

6. While working at the Gering store, Hansen did not obtain input from anyone other than Dennis Alesio with respect to her evaluation or selection of candidates for promotional opportunities.

7. ALCO calls its management employees "Group Managers." When a Group Manager goes on a leave of absence, ALCO temporarily assigns an hourly employee to act as an Interim Group Manager. When the regular manager returns from leave, the interim manager returns to his or her former position. Interim manager positions often arise unexpectedly and can range in duration from a few weeks to several months. Given the short time frame to fill the position, ALCO does not post open interim manager positions. Instead, Store Managers have the flexibility and discretion to assign the interim group manager position to the employee they feel to be best suited to perform the position.

8. During Hansen's time at ALCO's Gering store, she never posted the availability of interim positions.

9. In March 2005, the Customer Service Supervisor (Group Manager) position became open at ALCO's Gering, Nebraska store. Hansen posted a handwritten notice informing employees that a Group Manager position was available and to contact Rebecca by 4:00 p.m. on Friday, March 11, 2005 if interested.

10. Plaintiff saw this posting and acknowledged it was displayed for a week. He understood that the term "Group Manager" listed on the posting could have meant a Group Manager position in any of ALCO's departments, i.e., hard lines, soft lines, or customer service. Plaintiff did not apply for the posted position.

11. Shortly after Hansen posted the notice regarding the Customer Service Supervisor position, a need arose for an Interim Hardlines Group Manager. Consequently, Hansen was required

to assign an employee to fill the Hardlines Group Manager position on a temporary basis. Hansen did not post a notice for this opening because it was an interim position and it was not ALCO's practice to do so.

12. Only two people applied for the Customer Service Supervisor position: Adrienne Big Eagle-Crawford ("Adrienne") and Heidi Reinpold ("Heidi"). Adrienne is Native American and Heidi is white. No one else applied or expressed interest in this position from the time it was posted until after the position had already been filled.

13. After evaluating the qualifications of Adrienne and Heidi, Hansen determined that Adrienne was the most qualified application for the Customer Service Supervisor position. Hansen also determined that Heidi was the best fit for the Interim Hardlines Group Manager position.

14. Hansen did not consider anyone other than Heidi for the Interim Hardlines Group Manager position. Heidi was the only person other than Adrienne who had recently expressed interest in a Group Manager position and she had the necessary qualifications for the job. It was a full-time position, and Hansen needed to fill it quickly. Most of the store's employees worked part time, and Heidi was one of ALCO's few full-time employees at the Gering store.

15. After evaluating the applicants, Hansen contacted Dennis Alesio to obtain corporate approval of her decision. Hansen and Alesio discussed Hansen's decision to promote Adrienne to Customer Service Supervisor and to assign Heidi to the Interim Hardlines Group Manager position. Alesio approved Hansen's decision.

16. On March 16, 2005, Hansen announced that the Customer Service Supervisor position was being filled by Adrienne and the Interim Hardlines Group Manager position was being filled by

Heidi. Hansen did not obtain input or discuss her evaluation of the candidates for these positions with anyone other than Dennis Alesio.

17. Even if Hansen had considered other employees for the Interim Hardlines Group Manager position, she still would have chosen Heidi, in light of Heidi's work schedule, experience, and other qualifications.

18. Excluding the Customer Service Supervisor and Interim Hardlines Group Manager positions awarded to Adrienne and Heidi, Hansen promoted five people to management positions during her time as Store Manager at the Gering store. Three of these individuals were Hispanic.

19. During Hansen's tenure as Store Manager at the Gering store, plaintiff applied for a position as assistant manager in July 2004. Thereafter, plaintiff never formally applied for any other management positions, despite numerous openings.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue in this court is proper under 28 U.S.C. § 1391.

#### B. Summary Judgment Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see, e.g., Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997); NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2). "To establish the existence of a genuine issue of material fact, '[a] plaintiff may not merely point to unsupported self-serving allegations.' *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005). The plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.' *Id.* at 873." *Smith v. International Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008).

**C. Title VII Claims**

Plaintiff contends that ALCO discriminated against him by failing to promote him to a position as Interim Hardlines Group Manager due to his ethnicity or national origin. Plaintiff also claims that ALCO unlawfully retaliated against him for filing complaints of discrimination.

The plaintiff may survive ALCO's motion for summary judgment by presenting direct evidence of discrimination, i.e., evidence that shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the adverse employment action. *Arraleh v. County of Ramsey*, 461 F.3d 967, 974 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2100 (2007). Claims of discrimination based on direct evidence are analyzed under the mixed-motives analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

In the alternative, if the plaintiff does not present evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973), including sufficient proof of pretext. *Arraleh v. County of Ramsey*, 461 F.3d at 975; *Cuningkin v. City of Benton, Arkansas*, 2007 WL 707343 at *5 (E.D. Ark., Mar. 5, 2007).

In this case, the plaintiff has offered the affidavit and deposition testimony of Robert Sage as direct evidence of discrimination. Mr. Sage is a Caucasian male who worked for ALCO for about two years. He worked for ALCO in the flower hut, as a stocker, building furniture, and was working in maintenance when he left in May 2005, a week or two before the store closed. One day, about two months before Sage ended his employment at ALCO, Sage was emptying trash cans and opened the

door to a small office to empty the trash in that office. The office in question contained a safe and a copy machine and was located next to Rebecca Hansen's office. When Sage opened the door, he saw Rebecca Hansen and a manager, Bobbi Nuss, talking. Sage states that he overheard Nuss say to Hansen that "Mexicans don't make good managers," and that Hansen told Sage to leave the office because they were talking. During his deposition, Sage acknowledged that he was not ever directly involved in promotion decisions at ALCO and had no firsthand knowledge of the company's policies regarding promotion decisions or the way ALCO evaluated its job candidates. He also admitted that he did not know for sure what Hansen and Nuss were talking about and did not otherwise hear any other derogatory or negative comments about Mexicans in conjunction with the March 2005 job posting.

Assuming, without deciding, that the statement "Mexicans don't make good managers" was made by Bobbi Nuss to Rebecca Hansen, Sage admitted that he did not know what Nuss and Hansen were talking about. The statement, if made, represents only an isolated incident which cannot be evaluated in any context. There is no evidence that Nuss was referring to the plaintiff, or that the comment was related to the process of deciding who to promote to the positions of Customer Service Supervisor and Interim Hardlines Group Manager. There is no evidence that Bobbi Nuss had any authority to make hiring decisions, or that she had any input or influence regarding Hansen's hiring decisions. The court finds that the testimony of Robert Sage regarding the comment made by Bobbi Nuss does not constitute direct evidence of discrimination in this instance.

Since the plaintiff has not presented direct evidence of discrimination, the court must apply the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*.

> To survive summary judgment under *McDonnell Douglas,* "the plaintiff must establish a prima facie case of employment discrimination. If established, the employer may advance a legitimate, nondiscriminatory reason for the employee's discharge. The burden of production then returns to the plaintiff to show that the employer's reason is a pretext for [age, racial, or national origin] discrimination." *Canady v. Wal-Mart Stores, Inc.,* 440 F.3d 1031, 1034 (8th Cir. 2006) (internal citations omitted). To succeed at the pretext stage, the plaintiff "must prove that the prohibited reason was a determinative factor in [the employer's] decision to terminate." *Jones v. United Parcel Svc., Inc.,* 461 F.3d 982[, 991 (8th Cir. 2006)].

*Medina-Salas v. Tyson Fresh Meats, Inc.*, 2006 WL 2707444, No. 4:05CV3211 (D. Neb., Sept. 20, 2006), *aff'd*, 2008 WL 1959039, No. 06-3670 (8th Cir., May 7, 2008).

### 1. Discrimination Based on National Origin; Failure to Promote

To establish a prima facie case of national origin discrimination, the plaintiff must show that he: (1) is a member of a protected class; (2) applied for the promotion; (3) was qualified for the promotion; and (4) lost the promotion to persons who were not members of the protected class. *Cardenas v. AT & T Corp.*, 245 F.3d 994, 998 (8th Cir. 2001); *accord Navarro Gomez v. Bodycote Thermal Processing, Inc.*, 2007 WL 628334, Case No. 06-345 (D. Minn. Feb. 27, 2007).

The plaintiff, being Hispanic, is a member of a protected class. Heidi Reinpold, the employee selected to be the Interim Hardlines Group Manager, was not a member of this protected class. For purposes of this motion, ALCO does not contest plaintiff's qualifications for promotion to a position as Group Manager. The element in dispute is whether the plaintiff applied for the Interim Group Manager position.

In general, to establish a prima facie claim for failure to promote, the plaintiff must show that he or she applied for the promotion and was rejected. *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1135 (8th Cir. 2006). In this instance, the evidence is uncontroverted that the plaintiff saw Hansen's posted notice informing ALCO employees that a Group Manager position was available.

The notice was posted in a location open to all ALCO employees. Plaintiff acknowledged the posting was displayed for a week. Plaintiff did not apply for the posted position and understood that the term "Group Manager" listed on the posting could have meant a Group Manager position in any of ALCO's departments, i.e., hard lines, soft lines, or customer service.

Since ALCO's Interim Group Manager positions were never announced or posted, plaintiff contends he was not required to apply for such a position. "[A] formal application for a job opening is not required to establish a prima facie case of discrimination if the opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Bennett v. Nucor Corp.*, 2007 WL 2333193 at *9 (E.D. Ark. 2007) (citing *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 652 (8th Cir. 2001)). Failure to formally apply for a management position does not bar a plaintiff from establishing a prima facie claim, "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir.1990). *Accord Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007).

The record shows that plaintiff had formally applied for a position as an assistant manager in July 2004, but was not selected. Thereafter, the plaintiff never formally applied for any other management positions at ALCO, although numerous openings were posted. He testified during his deposition that he was hesitant to sign his name on an application after Hansen declined to hire him as assistant manager. According to plaintiff, he verbally told Hansen during casual conversations from time to time that he was "still interested" in a management position. One such conversation occurred as recently as February 2005. Plaintiff subsequently testified that he could not recall the

specific number of times he had expressed interest, or whether he had spoken to Hansen or to previous managers. The record also shows that the jobs at issue in this lawsuit were full-time positions. Plaintiff worked only 15 to 25 hours per week by his own request, as he had another business buying and renovating old homes. Doc. 40-2 at pp. 13-15/21 ( Plaintiff's Dep. at 129:21-131:3).

After careful consideration, the court finds that the plaintiff has not shown that he "made every reasonable attempt to convey his interest in the job to the employer." *See Allen*, 475 F.3d at 937; *Chambers*, 909 F.2d at 1217. The plaintiff made no written applications for management positions after July 2004 and had specifically requested a part-time schedule. Even assuming that plaintiff verbally mentioned in passing that he was "still interested" in receiving a promotion, the store manager would have no particular reason to believe the plaintiff had become available to work full-time hours or would be interested in receiving a temporary appointment as a full-time Interim Group Manager. For these reasons, the court finds that the plaintiff did not, either actually or constructively, apply for a promotion to any Group Manager position with ALCO.

Since the plaintiff has not shown that he applied for the promotion at issue, he has not made a prima facie case of national origin discrimination.

Even if the court were to assume that plaintiff established a prima facie case of national origin discrimination or retaliation, ALCO advanced several legitimate, nondiscriminatory reasons for its decision to appoint Heidi Reinpold to the position of Interim Hardlines Group Manager. Reinpold was a full-time employee with experience in Hardlines, and she had actually applied for a Group Manager position. It is undisputed that Hansen believed Reinpold was more qualified than plaintiff for the Interim Hardlines Group Manager position in light of her work schedule, experience,

and other qualifications, such as hardlines experience, working well with management and coworkers, demonstrating a strong work ethic and willingness to learn, and performing her current job well. Finally, Rebecca Hansen promoted five people to management positions while she was Store Manager at ALCO's store in Gering. Three of the five individuals were Hispanic. The plaintiff has not shown that the reasons given by ALCO for promoting other employees were a pretext for unlawful discrimination against him.

"[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004). The plaintiff did not apply for either Group Manager position, and the circumstances of ALCO's promoting Adrienne Big Eagle-Crawford and Heidi Reinpold to Group Manager positions instead of promoting the plaintiff do not give rise to an inference of unlawful discrimination based on ethnicity or national origin.

### 2. Unlawful Retaliation

Title VII prohibits retaliation against employees who initiate or participate in a proceeding or investigation involving their employer's alleged violations of Title VII. 42 U.S.C. § 2000e-3(a). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first demonstrate a prima facie case of retaliation. *Recio v. Creighton University*, 521 F.3d 934, 938 (8th Cir. 2008).

> In a retaliation claim, the plaintiff establishes his prima facie case by showing that: "(1) he engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Singletary v. Mo. Dept. of Corr.,* 423 F.3d 886, 892 (8th Cir. 2005).

*Arraleh v. County of Ramsey*, 461 F.3d at 977.

The plaintiff did engage in protected conduct by filing charges of discrimination with the Nebraska Equal Opportunity Commission (NEOC) on May 28, 2004 and August 10, 2004. The May 28, 2004 charge was amended on February 23, 2005.

In this case, it is undisputed that ALCO considered only those employees who applied in response to the posting as candidates for the Customer Service Supervisor and interim Hardlines Group Manager positions. As discussed above, plaintiff did not apply for either job. Accordingly, the court finds that plaintiff did not suffer any "adverse employment action" when ALCO did not promote him to a Group Manager position in March 2005.

Nor has the plaintiff shown any causal connection between his filing an amended discrimination charge on February 23, 2005 and ALCO's promoting other employees to Group Manager positions in March 2005. There is no evidence that Hansen knew that the plaintiff had amended his charge of discrimination. Plaintiff also contends that an unfavorable employment evaluation completed by Hansen in July 2004 was temporally related to his filing a claim of discrimination in May of that year. An inference of a causal connection between a charge of discrimination and an adverse employment action can be drawn from the timing of the two events; however, in general, more than a temporal connection is required to present a genuine factual issue on retaliation. *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005); *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). In this case, only temporal connections have been shown, and the court finds that the plaintiff has not shown a causal connection necessary to establish a prima facie case. Nor has the plaintiff shown that ALCO's legitimate, nonretaliatory reasons for promoting persons other than him are a pretext for unlawful discrimination.

## CONCLUSION

In summary, the court finds that the plaintiff has not met his burden of proving a prima facie case of discrimination based on national origin or unlawful retaliation. ALCO's decisions to promote persons other than the plaintiff to management positions in March 2005 were not made under circumstances that give rise to an inference of unlawful discrimination. Even assuming that plaintiff had proven a prima facie case, ALCO articulated legitimate, non-discriminatory reasons for its employment decisions and the plaintiff cannot show those reasons were a pretext for unlawful discrimination.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment [39] is granted in its entirety.

2. Pursuant to this Memorandum and Order, judgment will be entered in favor of the defendant and against the plaintiff.

**DATED August 19, 2008.**

  BY THE COURT:

  s/ F.A. Gossett
  **United States Magistrate Judge**